UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAN WAYNE LUSSIER, JR.,           :
                                   :
        Plaintiff,                 :
                                   :
        v.                         :        CASE NO.  3:18cv194(DFM)
                                   :
NANCY A. BERRYHILL, ACTING        :
COMMISSIONER OF SOCIAL SECURITY   :
ADMINISTRATION,                    :
                                   :
        Defendant.                 :


RULING AND ORDER

The plaintiff, Dan Wayne Lussier, Jr., seeks judicial review pursuant to 42 U.S.C. § 405(g) of a final decision by the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Pending before the court are the plaintiff's motion to reverse the Commissioner's decision (doc. #22) and the Commissioner's motion to affirm the decision. (Doc. #25.)  For the reasons set forth below, the plaintiff's motion is denied and the defendant's motion is granted.

I.   Administrative Proceedings

On October 25, 2011, the plaintiff applied for DIB and SSI alleging that he was unable to work due to "TBI; back, hip, neck and shoulder pain; personality disorder; major depression; and hypertension."  (R. at 590.)  The Social Security Administration

denied the plaintiff's applications initially and on reconsideration. The plaintiff requested a hearing before an Administrative Law Judge. A hearing was held on August 20, 2013, after which the ALJ issued an unfavorable decision. On May 7, 2015, the Appeals Council remanded for a new hearing to obtain vocational expert testimony. (R. at 36.) A hearing was held on April 3, 2016 at which the plaintiff, represented by counsel, and a vocational expert testified. A supplemental hearing for additional vocational testimony was held on July 26, 2016. (R. at 230-243.) Because he had returned to work, the plaintiff amended his claim to a closed period of benefits for the period of December 31, 2009 (his last date insured) through June 16, 2015. (R. at 232.) On November 16, 2016, the ALJ issued a decision finding that the plaintiff was not disabled under the Social Security Act. On December 3, 2017, the Appeals Council denied the plaintiff's request for review. This action followed.

II. <u>Facts and Legal Standard</u>

The court assumes familiarity with the plaintiff's medical history (summarized in a stipulation of facts, doc. #26, that are adopted and incorporated herein by reference), and the five sequential steps used in the analysis of disability claims. The court cites only those portions of the record and the legal standard necessary to explain this ruling.

III. <u>The ALJ's Decision</u>

The ALJ first determined that the plaintiff had not engaged in substantial gainful activity from December 31, 2009 through June 16, 2015. (R. at 14.) At step two, the ALJ found that the plaintiff had severe impairments of "acquired traumatic brain injury, depressive disorder, anxiety, status post thoracic spine fracture [and] degenerative disc disease of the lumbar spine." (R. at 15.) At step three, the ALJ found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (R. at 15.) Specifically, the ALJ found that the plaintiff's impairments, considered singly and in combination, did not meet or medically equal the criteria of Listings 1.04 (disorders of the spine), 12.02 (organic mental disorder), 12.04 (affective disorders), and 12.06 (anxiety disorders). The ALJ next found that the plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he is limited to "simple, routine, repetitious work tasks that do not require teamwork or working closely with the public; occasional interaction with the public, co-workers, and supervisors. He is further limited to occasional bending, balancing, kneeling, crawling, twisting, squatting, and climbing." (R. at 17.) At step 4, the ALJ found that the plaintiff was unable to perform his

3

past relevant work as an auto body technician. (R. at 21.)  At step 5, after considering the plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ found that there existed jobs in significant numbers in the national economy that the plaintiff could perform. (R. at 22.)  Accordingly, the ALJ determined that the plaintiff was not disabled within the meaning of the Act from December 31, 2009 through June 16, 2015.  (R. at 22.)  This action followed.

IV.  Standard of Review

"This court's review of the ALJ's decision is limited." Black v. Colvin, No. 3:16CV1727(MPS), 2017 WL 6485687, at *3 (D. Conn. Dec. 19, 2017).  "The decision 'may be set aside only due to legal error or if it is not supported by substantial evidence.'" Id. (citation omitted).  In determining whether the ALJ's findings are supported by substantial evidence, "'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)). "Substantial evidence is more than a mere scintilla. . . . It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 447 (2d Cir. 2012)(quotation marks and

4

citations omitted).  It is "a very deferential standard of review-
even more so than the clearly erroneous standard. . . . The
substantial evidence standard means once an ALJ finds facts, [the
court] can reject those facts only if a reasonable factfinder would
have to conclude otherwise."  Id. at 447-48.  "Even where the
administrative record may also adequately support contrary
findings on particular issues, the ALJ's factual findings must be
given conclusive effect so long as they are supported by
substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir.
2010) (internal quotation marks omitted).  See also Bonet ex rel.
T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)("[W]hether there
is substantial evidence supporting the appellant's view is not the
question here; rather, we must decide whether substantial evidence
supports the ALJ's decision.")(citations omitted)(emphasis in
original).

V.   Discussion

        The plaintiff asserts that remand is warranted because the
ALJ erred in finding that the plaintiff does not meet Listing
§ 12.02; failed to properly apply the treating physician rule;
and failed to fully develop the record.

A.   Listing 12.02

        The plaintiff argues that (1) the ALJ failed to adequately
explain his finding that the plaintiff does not meet Listing 12.02
and (2) the finding is not supported by substantial evidence.

The plaintiff bears "the burden of proof at step three to show that [his] impairments meet or medically equal a Listing." Whitley v. Colvin, No. 3:17CV121(SALM), 2018 WL 1026849, at *8 (D. Conn. Feb. 23, 2018). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

As a threshold matter, the plaintiff incorrectly cites to the current version of Listing 12.02, which became effective January 17, 2017. See Revised Medical Criteria for Evaluating Mental Disorders, 81 F.R. 66138, 2016 WL 5341732 (Sept. 26, 2016). The ALJ rendered his decision in this case on November 16, 2016. The regulations provide that federal courts reviewing an SSA decision "us[e] the rules that were in effect at the time [the SSA] issued the decision[]. 81 F.R. 66138 n.1. Accordingly, the court utilizes the version of Listing 12.02 that was in effect when the ALJ adjudicated the plaintiff's claim. See Harmon v. Comm'r of Soc. Sec., No. 17-CV-171-FPG, 2018 WL 1586750, at *8 (W.D.N.Y. Apr. 2, 2018) (same).

Listing 12.02 applies to "Organic Mental Disorders," defined as "[p]sychological or behavioral abnormalities associated with a dysfunction in the brain." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02. "To satisfy this listing, plaintiff's impairment must

meet both the paragraph A and B criteria, or the paragraph C
criteria of that list." Cote v. Berryhill, No. 3:17CV1843(SALM),
2018 WL 4092068, at *9 (D. Conn. Aug. 28, 2018).

The ALJ determined that the plaintiff did not meet the
paragraph B criteria.[1]

To satisfy paragraph B, the plaintiff's mental impairment
must result in at least two of the following:

> 1. Marked restriction of activities of daily living;
> or
> 2. Marked difficulties in maintaining social
> functioning; or
> 3. Marked difficulties in maintaining concentration,
> persistence, or pace; or
> 4. Repeated episodes of decompensation, each of
> extended duration.

The ALJ found that the plaintiff had a mild restriction in
the activities of daily living; moderate difficulties with social
functioning; moderate difficulties in maintaining concentration,
persistence, or pace; and one episode of decompensation of extended
duration. (R. at 16.)

The plaintiff argues that the ALJ failed to provide an
adequate explanation for his finding that the plaintiff did not
meet the listing. The plaintiff asserts that the ALJ mentions

---

[1]The ALJ also considered whether the paragraph C criteria for
Listing 12.02 was satisfied and determined that the evidence failed
to establish the presence of the paragraph C criteria. (R. at 16-
17.) The plaintiff does not contest this finding.

Listing 12.02 "only in passing" and provides "no analysis."  (Doc.
#22-1 at 6.)

The plaintiff's argument appears to arise from his reliance
on the incorrect version of the Listing.  The ALJ utilized the
correct version of Listing 12.02 and provided an extensive
discussion of the evidence regarding each of the paragraph B
requirements.[2]  (R. at 15-16.)  The ALJ adequately articulated the
specific reasons underlying his determination that the plaintiff
did not meet the listing.  Remand is not warranted on this ground.

The plaintiff next argues that substantial evidence does not
support the ALJ's determination that the plaintiff did not meet
the requirements of paragraph B.  The plaintiff points to an April
2012 mental functioning questionnaire co-signed by psychiatrist
Dr. Brian Benton.  Under the category of Task Performance, Dr.
Benton opined that the plaintiff has "obvious problems" with:
carrying out multi-step instructions, focusing long enough to
finish assigned simple activities or tasks, performing basic work
activities at a reasonable pace/finishing on time, and performing
work activity on a sustained basis.  (Doc. #22-1 at 5; doc. #26 at
17; R. at 868.)  This evidence, the plaintiff contends, "satisfies
the B criteria requiring marked limitations on [sic] two areas of

_____

[2]The paragraph B requirements of Listing 12.02 are the same
as paragraph B requirements for Listings 12.04 and 12.06, which
the ALJ also considered.  As a result, the decision contains one
discussion of the paragraph B criteria.

mental functioning: understand, remember, or apply information and concentrate, persist, or maintain pace."[3] (Doc. #22-1 at 5.)

Substantial evidence supports the ALJ's determination that the plaintiff did not satisfy the paragraph B criteria of Listing 12.02.  As to the Activities of Daily Living, Dr. Benton found that the plaintiff had "no problem"[4] caring for his physical needs, using good judgment regarding safety and dangerous circumstances, and using appropriate coping skills to meet ordinary demands of a work environment and only a "slight problem" taking care of personal hygiene and handling frustration appropriately.  (R. at 867; Jt Stip at 17.)  In addition, the record indicates that the plaintiff saw his minor child every weekend and was active in his son's sports.  (Jt Stip at 26.)  The plaintiff testified that he could dress himself, wash, make simple meals and do laundry.  (R. at 287.)  He indicated that he lived alone and had no problems handling self-care.  He prepared his own meals, washed dishes, did laundry, cleaned, shopped, paid bills, and drove and went out

---

[3]As indicated, the plaintiff cites to the current version of Listing 12.02, which does not apply to this case.  To satisfy the paragraph B criteria of that version, the claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the following four areas of mental functioning:  1. Understand, remember, or apply information; 2. Interact with others; 3. Concentrate, persist, or maintain pace; 4. Adapt or manage oneself.

[4]The mental questionnaire form asked the treater to evaluate the plaintiff's functional abilities on a five-point scale: no problem, a slight problem, an obvious problem, a serious problem, and a very serious problem.

independently. (Jt Stip at 15.)  The record amply supports the ALJ's conclusion that the plaintiff did not suffer from marked restriction in his activities of daily living.

Substantial evidence also supports the ALJ's finding that the plaintiff had a less than marked restriction in social functioning. The record reflects that the plaintiff was dating, attending therapy, spending time with his son, went on job interviews, and did "odd jobs" and "side jobs for friends." (Jt Stip at 14, R. at 1270.)  Dr. Benton assessed the plaintiff with "no problem" "getting along with others without distracting them or exhibiting behavorial extremes" and a "slight problem" with "interacting appropriately with others in a work environment," "asking questions or requesting assistance," and "respecting/responding appropriately to others in authority." (R. at 868.)

Because the ALJ's findings as to the plaintiff's activities of daily living and social functioning are supported by substantial evidence, and the plaintiff does not contend that he suffered repeated episodes of decompensation (each of extended duration), the court need not reach the issue of whether the ALJ's findings as to the plaintiff's ability to maintain concentration, persistence and pace are supported by substantial evidence.  See Dudley v. Berryhill, No. 3:16CV513(SALM), 2018 WL 1255004, at *8 n.5 (D. Conn. Mar. 12, 2018)(same); Barnett v. Colvin, No. 3:15-CV-00987-JE, 2017 WL 1100470, at *4 (D. Or. Mar. 2, 2017) ("[E]ven

10

if the ALJ had found that Plaintiff had marked restrictions in
concentration, persistence and pace, the absence of marked
restrictions in any other category precluded Plaintiff's mental
impairment from meeting the Listing. . . ."). The ALJ's finding
that the plaintiff failed to meet the paragraph B criteria of
Listing 12.02 is supported by substantial evidence.

B.   Treating Physician

The plaintiff next contends that the ALJ erred in his
application of the "treating physician rule."[5]  Specifically, the
plaintiff argues that the ALJ failed to explain his reasoning for
declining to give controlling weight to the opinion of Dr.
Umashanker, the plaintiff's treating psychiatrist.

"[T]he opinion of a claimant's treating physician as to the
nature and severity of the impairment is given controlling weight
so long as it is well-supported by medically acceptable clinical
and laboratory diagnostic techniques and is not inconsistent with

---

[5]The Social Security Administration has adopted regulations
changing the standards applicable to the review of medical opinion
evidence for claims filed on or after March 27, 2017.  See 20
C.F.R. § 416.920c(a) ("We will not defer or give any specific
evidentiary weight, including controlling weight, to any medical
opinion(s) ..., including those from your medical sources.... [W]e
will consider those medical opinions ... together using the factors
listed in paragraphs (c)(1) through (c)(5) of this section, as
appropriate."). Because the plaintiff filed his claim before March
2017, the court applies the treating physician rule under the
earlier regulations.  See Bellinger v. Commissioner of Social
Security, No. 3:17CV1692(MPS), 2018 WL 6716092, at *4 n.3 (D. Conn.
Dec. 21, 2018).

the other substantial evidence in the case record." <u>Greek v.</u>
<u>Colvin</u>, 802 F.3d 370, 375 (2d Cir. 2015) (internal citation,
quotation marks, and alterations omitted); 20 C.F.R.
§ 404.1527(d)(2). When a treating physician's opinion is not
given controlling weight, the ALJ must consider: (1) the length,
nature and extent of the treatment relationship; (2) the frequency
of examination; (3) the evidence presented to support the treating
physician's opinion; (4) whether the opinion is consistent with
the record as whole; and (5) whether the opinion is offered by a
specialist. 20 C.F.R. § 404.1527(d). The ALJ must set forth "good
reasons for not crediting the opinion of a claimant's treating
physician." <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999).

Dr. Umashankar co-signed an August 2013 Medical Source
Statement of Ability to Do Work-Related Activities (Mental)
completed by LCSW Melissa Razel of Southeastern Mental Health
Authority ("SMHA").[6] Dr. Umashankar found that the plaintiff had

---

[6]The form asked the treater to assess the plaintiff's ability
to perform certain work activities using the following scale:
    <u>None</u> – absent or minimal limitations. If limitations are
present, they are transient and/or expected reaction to
psychological stresses;
    <u>Slight</u> - There is some mild limitation in this area, but the
individual can generally function well.
    <u>Moderate</u> – There is moderate limitation in this area but the
individual is still able to function satisfactorily.
    <u>Marked</u> – There is serious limitation in this area. The
ability to function is severely limited but not precluded.
    <u>Extreme</u> - There is major limitation in this area. There is
no useful ability to function in this case.

"slight" problems with understanding, remembering, and carrying out simple instructions and in his ability to make judgments on simple work-related decisions and interacting appropriately with the public. The plaintiff was assessed with "marked" restrictions in his ability to understand, remember and carry out detailed instructions. Dr. Umashankar indicated that the plaintiff had "difficulties with organizing and sustaining attention and concentration that impair his ability to complete tasks in a timely manner secondary to TBI." (R. at 1417.) He assessed the plaintiff with "marked" restrictions in his ability to interact appropriately with supervisors and coworkers and an "extreme" restriction in his ability to respond appropriately to work pressures in a usual work setting. The form stated that the plaintiff "experiences mood dysregulation, irritability and impulsivity that impairs his ability to manage frustration and interpersonal conflict. Depressive symptoms cause [him] to withdraw from others." (R. at 1418.) Dr. Umashankar stated that the plaintiff would miss more than four days of work per month as a result of his impairments. Dr. Umashankar opined that the plaintiff could manage his own benefits if they were awarded and that his GAF was 63.[7]  (R. 1417-20.)

---

[7]A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships."

The ALJ did not accord controlling weight to Dr. Umashankar's opinion that the plaintiff suffered from marked and extreme limitations. He explained that Dr. Umashankar's opinion was not supported by clinical signs and findings and was inconsistent with the plaintiff's treatment and the opinions of the other examining and non-examining physicians. (R. at 20-21.)

The ALJ did not err. Psychiatrist Brian Benton co-signed a mental source statement in April 2012. He indicated that the plaintiff had impaired cognitive functions due to a brain injury, especially with executive functions. (Jt Stip at 17, R. at 866.) Dr. Benton noted that the plaintiff had good hygiene, adequate grooming, normal speech, no evidence of loosening or flight of ideas, and mood congruent to affect, ranging from mildly depressed to euthymic, depending on stress level. The plaintiff's judgment and insight were adequate given cognitive limitations. He had "no problems" caring for his physical needs, using good judgment regarding safety, using appropriate coping skills to meet the ordinary demands of a work environment, or getting along with others without distracting them or exhibiting behavioral extremes. He had "slight" problems with handling frustration appropriately,

---

American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 32 (4th ed. Text rev. 2000). "The GAF is no longer included in the most recent edition of the DSM." <u>Disbro v. Comm'r of Soc. Sec.</u>, No. 3:17CV335(ATB), 2018 WL 2727871, at *9 (N.D.N.Y. June 5, 2018).

social interactions, carrying out single-step instructions, and changing from one simple task to another.  The plaintiff had "obvious" problems with carrying out multi-step instructions, focusing long enough to finish assigned simple activities or tasks, performing basic work activities at a reasonable pace/finishing on time, and performing work activity on a sustained basis.  The plaintiff had neither "serious" nor "very serious" problems in any of the tasks listed under the categories of Activities of Daily Living, Social Interactions and Task Performance.  (R. 866-69).

Dr. Umashankar's opinion also is inconsistent with the results of the plaintiff's neuropsychological examinations conducted by clinical neuropsychologist Steven Brown, Psy.D.  Dr. Brown found that the plaintiff was alert, fully oriented, pleasant, cooperative, and adequately groomed; his affect was full range and appropriate to content; he had normal speech; no comprehension deficits, paraphasic errors, or word-finding problems during casual conversation; his thoughts were organized, relevant, and goal-directed; and there was no indication of hallucinations or delusions.  In testing performed in both 2008 and 2012, the plaintiff's inconsistent effort and exaggeration yielded non-credible test findings.  (Jt Stip at 20.)

Dr. Umashankar's opinion that the plaintiff had "marked" restrictions in his ability to interact appropriately with supervisors and coworkers and an "extreme" restriction in his

ability to respond appropriately to work pressures in a usual work setting is also inconsistent with the assessments by State agency psychological consultants. Drs. Harvey and Bangs reviewed the medical evidence and opined that the plaintiff had no marked limitations. (Jt Stip at 18.)

Dr. Umashankar's assessment is also unsupported by an SMHA evaluation. In a December 2012 evaluation at SMHA, the plaintiff was observed as alert, fully oriented, adequately groomed, and cooperative, with normal speech, calm motor activity, mildly depressed mood, appropriate affect, intact thought process, no impairment in thought content, no suicidal or homicidal ideation, intact memory, no intellectual impairment, intact cognitive functioning, and fair-to-poor insight and judgment due to a tendency to downplay negative behaviors in interpersonal issues and substance use. He was assessed with a GAF of 60. (R. 1084-98).

SMHA notes from June and September 2013 and April 2014 indicate that the plaintiff was psychiatrically stable. (R. at 1382, 1459, 1479.) December 2013 SMHA notes state that the plaintiff was cooperative, had normal speech, appropriate affect, euthymic mood, goal directed and logical thought process, intact memory and knowledge. His judgment was impaired and his insight poor. (R. at 1466.) He was assessed as psychiatrically stable. (R. at 1467.) SMHA notes are replete with the references to

plaintiff's working at odd jobs and his efforts looking for employment. Because Dr. Umashankar's opinion was not consistent with other substantial evidence in the record, including the opinions of other medical experts, the ALJ was not obligated to give it controlling weight.

The plaintiff next argues that the ALJ violated the treating physician rule because he failed to address the factors set forth in § 404.1527(c). It is apparent from the decision, however, that the ALJ considered the appropriate factors when deciding the weight to ascribe to Dr. Umashankar's opinion. (See R. at 20 (explaining that Dr. Umashankar's opinion was not supported by clinical signs and findings; that the limitations described in the opinion were inconsistent with the opinions of other treaters, as the ALJ had previously discussed; and that Dr. Umashankar specialized in psychiatry.) See, e.g., Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) ("[S]lavish recitation of each and every factor [is not required] where the ALJ's reasoning and adherence to the regulation are clear".); Johnson v. Berryhill, No. 3:17CV1255(MPS), 2018 WL 6381096, at *2 (D. Conn. Dec. 6, 2018)(no error where "the ALJ in substance applied each of the Greek factors"); Camille v. Berryhill, No. 3:17CV1283(SALM), 2018 WL 3599736, at *9 (D. Conn. July 27, 2018) (no error where although the ALJ did not "explicitly" discuss such factors, it was clear from the decision that that the proper analysis was undertaken.)

Accordingly, the ALJ did not err with respect to Dr. Umashankar's opinion.

C.    Obligation to Develop the Record

The plaintiff's final argument is that the ALJ failed to adequately develop the record.   The plaintiff asserts that he should have been permitted to present the testimony of Brian Parkhurst, an Acquired Brain Injury Specialist from Reliance House, a social service agency.

At the April 13, 2016 hearing before the ALJ, the plaintiff testified that he had been assigned caseworkers from Reliance House.   He explained that the caseworkers had given him "a lot of support" and help, including assistance in using the computer to apply for jobs online. (R. at 296.)   After completing his examination of the plaintiff, plaintiff's counsel did not call Mr. Parkhurst as a witness (the record indicates he was present) but rather asked the ALJ "to consider Mr. Parkhurst's testimony."   (R. at 298.)   The ALJ responded "We'll hold that under advisement, if we need it, for even a supplemental hearing."   Plaintiff's counsel did not press the issue or object. The ALJ then proceeded to hear evidence from the vocational expert.   In his closing, plaintiff's counsel explained that "the proffer for Mr. Parkurst would be his skill with dealing with people with acquired brain injuries" and the fact that he had worked with the plaintiff since July 2013.

(R. at 302.) Plaintiff's counsel did not articulate any specific evidence to which Mr. Parkhurst would testify.

Thereafter, the ALJ scheduled a supplemental administrative hearing on July 26, 2016 to obtain additional vocational testimony by a new vocational expert. (R. at 233.) At that hearing, plaintiff's counsel stated that Mr. Parkhurst had been prepared to testify at the prior hearing in April but that he was not available for the supplemental hearing. (R. at 241.) The ALJ responded that "I don't think you told me about him" and indicated that he would not have "declined some testimony like that." The ALJ told plaintiff's counsel could submit written evidence as to what Mr. Parkhurst "want[ed] to say." (R. at 242.)

Subsequently, in a letter to the ALJ in August 2016, plaintiff's counsel argued that the ALJ should not have held a supplemental hearing to adduce additional vocational testimony. (R. at 697.) Plaintiff's counsel said that Mr. Parkhurst had left his employment at Reliance House after the April hearing. (R. at 698.) Plaintiff's counsel argued that Mr. Parkhurst "should have been permitted to testify at the April 13, 2016 hearing" and that "[t]he failure to take this testimony was extremely prejudicial to the plaintiff" because it would have "enabled [plaintiff's counsel] cross examin[e] the vocational expert more effectively." (R. at 698.) He did not explain further.

The ALJ stated in his decision that Mr. Parkhurst was not available at the July 2016 hearing but incorrectly stated that plaintiff's counsel did not request that Mr. Parkhurst testify at the April 2016 hearing. (R. at 12.) The ALJ explained that although he told plaintiff's counsel he could submit "any written statements he wishe[d] to submit from Mr. Parkhurst" for the court's consideration, plaintiff's counsel had not submitted anything. (R. at 12.)

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. . . . This duty exists even when the claimant is represented by counsel . . . ." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)(citations omitted). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information." Pellam v. Astrue, 508 F. App'x 87, 90 (2d Cir. 2013) (citing Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999)). "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant, and plaintiff bears the burden of establishing such harmful error." Parker v. Colvin, No. 3:13CV1398(CSH), 2015 WL 928299, at *12 (D. Conn. Mar. 4, 2015) (quotation marks omitted) (collecting cases). See also Santiago

v. Astrue, No. 3:10CV937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) ("The plaintiff in the civil action must show that he was harmed by the alleged inadequacy of the record[.]" (citation omitted)).[8]

The plaintiff contends that the "ALJ effectively prevented the plaintiff from fully presenting his case." (Doc. #22-1 at 11.) According to the plaintiff, the ALJ's failure to permit Mr. Parkhurst's testimony was harmful because the ALJ failed to "evaluate or discuss the many pages of treatment notes from [him], indicating among other things, that the plaintiff needed assistance with his home, which at times, was in disarray.

The ALJ did not err. Here, the ALJ had before him the plaintiff's testimony (at the 2013 and April 2016 hearings) and a complete medical record encompassing more than 1500 pages of medical evidence, including records from Reliance House. (R. 1250-1367, 1386-1415, 1649-1747, 1838-48).[9] The plaintiff has not met his burden of showing the significance of the missing evidence and

---

[8]The regulations provide that a disability claimant "may present witnesses and question any witnesses at the hearing." 20 C.F.R. § 404.916(b)(4) and that "[w]itnesses may appear at a hearing." 20 C.F.R. § 404.950(e). "[T]he presentation and questioning of witnesses [is] permissive, not requisite." Infante v. Apfel, No. 97 CIV. 7689 LMM, 2001 WL 536930, at *9 n.7 (S.D.N.Y. May 21, 2001). See Cockrell v. Colvin, No. 13-CV-757 CG, 2014 WL 12789690, at *7 (D.N.M. July 10, 2014)(same).

[9]The record also contained the August 2013 testimony of Katie Zappieri, a caseworker at the Reliance House who assisted the plaintiff. (R. at 242.)

how he was harmed. The record is bereft of any specifics as to what Mr. Parkhurst's testimony would have been and how the lack of that testimony prejudiced the plaintiff, especially considering that counsel made no effort to provide it to the court in a written form. See Duprey v. Berryhill, No. 3:17CV607(SALM), 2018 WL 1871451, at *10 (D. Conn. Apr. 19, 2018)("[p]laintiff has not established that additional treatment notes would have impacted the ALJ's decision. Accordingly, the Court finds that even if the ALJ had erred, the error would be harmless."); Santiago, 2011 WL 4460206, at *2 ("The plaintiff makes only a general argument that any missing records possibly could be significant, if they even exist. That argument is insufficient to carry his burden.") There was no obvious gap in the record and therefore, the ALJ was under no obligation to seek additional information.

VI. Conclusion

For these reasons, the plaintiff's motion to reverse and/or remand the Commissioner's decision (doc. #22-1) is denied and the defendant's motion to affirm the decision of the Commissioner (doc. #25-1) is granted.

SO ORDERED at Hartford, Connecticut this 11th day of January, 2019.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge